UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


JOSEPH RAYMOND STEIB, SR.,                    CIVIL ACTION

VERSUS                                        NO: 24-2486

HUNTINGTON INGALLS, INC., et al.              SECTION: T (5)


**ORDER AND REASONS**

Before the Court are two motions for summary judgment: one filed by Third-Party Defendant Berkshire Hathaway Specialty Insurance Company ("Berkshire"), as an alleged insurer of Eagle, Inc. ("Eagle"), R. Doc. 158, and another filed by Defendant and Crossclaim Defendant, Eagle, R. Doc. 159. Defendant, Third-Party Plaintiff, and Crossclaimant Huntington Ingalls Incorporated ("Avondale") opposes both motions. R. Docs. 192, 193. Berkshire has filed a reply in support of its motion, R. Doc. 204, and Avondale has filed a sur-reply, R. Doc. 208. Eagle has also filed a reply in support of its motion. R. Doc. 227. The Court has considered the parties' briefs, the record, and the applicable law. For the following reasons, Berkshire's Motion (R. Doc. 158) is **GRANTED,** and Eagle's Motion (R. Doc. 159) is **DENIED**.

## I. BACKGROUND

This is an alleged asbestos exposure case. Plaintiff,[1] Joseph Raymond Steib, Sr., worked for Avondale Shipyards from approximately 1968 to 2011 as a tack welder, pipefitter, and

---

[1] Joseph Raymond Steib, Sr. passed away on January 31, 2026. R. Doc. 181. His heirs filed a Motion to Substitute Party Plaintiffs, R. Doc. 186, which the Court granted in part, substituting Janai Steib as Plaintiff in this matter in her capacity as Independent Executrix of the Estate of Joseph Steib, Sr., R. Doc. 217.

1

foreman. R. Doc. 1-2, p. 14. He alleges that, while employed by Avondale, he "used, handled, and/or was in the vicinity of others using and/or handling asbestos and/or asbestos-containing products" and "dangerously high levels of asbestos fibers escaped into the ambient air of the work place." *Id.* Plaintiff further alleges that his wife, Elaine Weber Steib ("Mrs. Steib" or "Decedent"), developed mesothelioma and later died from the disease because she was exposed to asbestos fibers from his work clothes and his personal vehicle.[2] R. Doc. 1-2, pp. 8-9, 15.

On August 1, 2024, Plaintiff filed a petition for damages against Huntington Ingalls Incorporated, formerly known as Avondale Shipyards Inc. ("Avondale"), and other defendants in the Civil District Court for the Parish of Orleans. R. Doc. 1-2, pp. 6-8. The petition asserts that Avondale negligently failed to provide Plaintiff with a safe place to work free from the hazards of asbestos, failed to warn Plaintiff, his coworkers, or the Decedent of the dangers of asbestos exposure, and failed to implement adequate safety measures to prevent the transportation of asbestos fibers home on Plaintiff's clothing. *Id.* at pp. 15-18, 19-25. The other named defendants in Plaintiff's petition include Eagle, Inc. ("Eagle") (formerly known as Eagle Asbestos & Packing Co. Inc.), a seller, supplier, and manufacturer of asbestos-containing products, which Plaintiff alleges distributed and installed asbestos-containing products at Avondale that Mr. Steib brought home on his work clothes, thereby exposing Mrs. Steib to asbestos. *Id.* at pp. 18-19.

Avondale subsequently removed the action to this Court, asserting federal officer jurisdiction under 28 U.S.C. § 1442(a)(1). R. Doc. 1, p. 1. Plaintiff filed a motion to remand, R. Doc. 45, which the Court denied, R. Doc. 116. On October 31, 2024, Avondale filed crossclaims

---

[2] Mrs. Steib was diagnosed with mesothelioma on or about April 29, 2024, and died on June 20, 2024. R. Doc. 1-2, pp. 3, 8.

against several co-defendants, including Eagle. R. Doc. 14, pp. 17, 22-23. Avondale alleges that Eagle's products "were used, installed, removed, and/or repaired at Avondale" and that, if Mrs. Steib was exposed to asbestos dust from products during Mr. Steib's employment at Avondale, this exposure "was caused by the fault, negligence, and strict liability of Defendant Eagle and/or Eagle's insurers." *Id.* at p. 23. Avondale also asserted third-party demands against multiple alleged insurers of Eagle, including Berkshire Hathaway Specialty Insurance Company ("Berkshire"). *Id.* at p. 18. Avondale brings these direct-action claims under La. R.S. 22:1269 and alleges that Berkshire, as liability insurer of Eagle, is responsible for Eagle's liability. *Id.* at p. 23.

### a. *Berkshire's Motion for Summary Judgment (R. Doc. 158)*

Berkshire filed its motion ("Berkshire's Motion") on February 24, 2026, seeking summary judgment on the ground that Avondale cannot establish that Mr. Steib was exposed to asbestos from Eagle products during Berkshire's policy periods of August 12, 1974, to August 12, 1975, and August 12, 1976, to August 12, 1977. R. Doc. 158-1, p. 1. Berkshire argues that, absent evidence of Eagle-linked exposure during these policy periods, its alleged policies are not triggered and, therefore, it cannot be liable as Eagle's insurer. R. Doc. 158-1, p. 1; R. Doc. 204, pp. 1-2.

In opposition, Avondale relies on circumstantial evidence and contends that Mr. Steib performed overtime and transfer work aboard cargo ships, including weekend work cleaning engine rooms and other shipboard work around insulators. R. Doc. 192, pp. 3-5. Avondale further contends that Eagle half-round insulation was used on cargo ships constructed at Avondale in the 1970s, including LASH vessels;[3] that such insulation work generated dust; and that asbestos from

---

[3] "LASH vessels" refer to "lighter aboard ship" vessels. *See, e.g.*, *Bourgeois v. Huntington Ingalls Inc.*, No. CV 20-1002, 2020 WL 2488026, at *2 (E.D. La. May 14, 2020).

those products was more likely than not carried home on Mr. Steib's clothing, thereby exposing Mrs. Steib. *Id.* at pp. 3-8; R. Doc. 192-1, pp. 2-4. Avondale also relies on expert testimony and historical deposition testimony from former Avondale workers who identified Eagle products being used aboard ships and in engine rooms. R. Doc. 192-1, pp. 2-5; R. Doc. 192-11, pp. 3-7.

In its reply, Berkshire argues that Avondale's proof is too general and does not satisfy the specific policy-period showing required to proceed against Berkshire as Eagle's alleged insurer. R. Doc. 204, pp. 1-3. Berkshire emphasizes that Mr. Steib did not identify Eagle products in his own testimony and that none of Avondale's historical witnesses places Mr. Steib himself around Eagle products during the policy periods. *Id.* Berkshire further argues that, based on Avondale's own expert materials, the relevant part of the first Berkshire policy period is effectively narrowed to the period between August 12, 1974, and September 23, 1974, because Mr. Steib transferred to the shipfitting department on September 23, 1974. *Id.* at p. 2. Therefore, Berkshire contends that Avondale has failed to produce evidence of Eagle-linked exposure during that narrowed interval. *Id.* at pp. 1-3.

In its sur-reply, Avondale argues that Berkshire overstates the effect of Mr. Steib's transfer to shipfitting and misreads the opinions of Avondale's industrial hygiene expert, Brent Levingston. R. Doc. 208, pp. 1-2. Specifically, Avondale points out that, although Levingston opined that Mr. Steib "did not receive direct or bystander exposure to asbestos *while working on the platens*," Levingston also stated that, while assigned to the shipfitting department, Mr. Steib "*occasionally worked on vessels and barges*, either as short-term transfer work or during weekend overtime work," during which he continued to work around insulators handling asbestos-containing materials. *Id.* at p. 2 (quoting R. Doc. 158-10, p. 20) (emphasis added in original). Avondale also

cites Mr. Steib's testimony that he continued to perform weekend overtime work on ships throughout his Avondale career, including after he became a foreman and superintendent, and that on those shifts he continued to work around insulation activities. *Id.* at pp. 2-4 (citing R. Doc. 192-2, pp. 3-4, 12). Avondale contends that this defeats Berkshire's attempt to reduce the first policy period to less than six weeks. *Id.* at p. 4.

### b. *Eagle's Motion for Summary Judgment (R. Doc. 159)*

Eagle also filed its motion ("Eagle's Motion") on February 24, 2026, originally seeking dismissal of all claims asserted against it by Plaintiff and by Avondale. R. Doc. 159. Plaintiff subsequently settled its claims with Eagle, R. Docs. 221, 225, and Eagle then withdrew its motion as to Plaintiff and reserved its rights as to Avondale's crossclaim, R. Docs. 227, 228. Accordingly, the only issue remaining before the Court is whether Eagle is entitled to summary judgment on Avondale's crossclaim. Eagle argues that there is no evidence that Mr. Steib ever worked with or around any product supplied by Eagle and, therefore, no evidence that any alleged household exposure sustained by Mrs. Steib was attributable to Eagle. R. Doc. 159-3, pp. 1-2, 5-7. Eagle emphasizes that Mr. Steib did not identify Eagle, did not identify the supplier of insulation materials used at Avondale, and did not know what company supplied insulation materials used on cargo ships. *Id.* at 6-7. Eagle further contends that the mere fact that it sold products to Avondale is insufficient to establish product identification or causation. *Id.* at 5-7.

In opposition to Eagle's motion, Avondale argues that Eagle's Motion should be denied because the circumstantial evidence on record is sufficient to create a genuine dispute of material fact as to whether Mr. Steib was exposed to asbestos from Eagle's products during his shipboard work at Avondale. R. Doc. 193, pp. 1-2. Avondale contends that Mr. Steib performed overtime

and repair work aboard cargo ships and cleaned up engine rooms aboard those ships from approximately 1970 to 1973, working in the presence of insulators who applied half-round pipe insulation to steam lines. *Id.* at pp. 3-4. Avondale further asserts that Eagle supplied half-round insulation products that were used on LASH vessels and other cargo ships constructed at Avondale during those years, that the installation and cleanup of those materials generated visible asbestos dust, and that such dust contaminated Mr. Steib's work clothing and was carried home to Mrs. Steib. *Id.* at pp. 4-8. It supports these facts with historical deposition testimony from multiple former Avondale workers, who identified Eagle-labeled insulation products being used by insulators aboard LASH vessels and in engine rooms, and described the visible dust generated when working with those materials. *Id.*

Avondale also relies on expert testimony. Its industrial hygienist, Brent Levingston, opines that Mrs. Steib was more likely than not exposed to asbestos fibers from Eagle products brought home on Mr. Steib's work clothes and that such exposure more likely than not increased her risk of disease. R. Doc. 193, p. 8; R. Doc. 193-12, pp. 4-6. Avondale's medical expert, Dr. Richard Kradin, opined that Mr. Steib worked around asbestos-containing materials that more likely than not included insulation from Eagle, and that the resulting take-home exposure was a significant contributing factor in Mrs. Steib's development of mesothelioma. R. Doc. 193, pp. 8-9; R. Doc. 193-13, pp. 20-21. Plaintiff's medical expert, Dr. Brent Staggs, similarly testified that exposures from Eagle insulation products would have been a significant contributing factor to Mrs. Steib's mesothelioma. R. Doc. 193, p. 9; R. Doc. 193-15, pp. 2-3.

In its reply, Eagle argues that Avondale's proof remains insufficient because none of the historical witnesses cited by Avondale knew Mr. Steib, worked with him, or otherwise testified

6

that he was present when any product supplied by Eagle was being used. R. Doc. 203, pp. 2-3. Eagle further argues that Avondale's evidence establishes at most that Eagle sold products to Avondale, which Louisiana courts have held is insufficient to establish product identification or causation, and that the Court should not infer facts that no witnesses have supplied. *Id.* at p. 3. Eagle also emphasizes that Mr. Steib, the only firsthand witness to his own work at Avondale, never identified Eagle or any insulation supplier in his deposition, did not see boxes or containers from which pipe insulation was taken, and could not identify the vessels on which he performed overtime work beyond describing some as cargo ships. *Id.* at p. 2.

While both Berkshire's Motion and Eagle's Motion concern the issue of whether Mr. Steib was exposed to asbestos-containing products from Eagle—in fact, parties raise similar arguments in support of and in opposition to each motion—the Court notes that Berkshire's motion is narrower in scope. The key distinction between the two motions lies not in the underlying evidence of exposure, but in the additional showing required to trigger an insurer's policy coverage under Louisiana law, as discussed in the Court's analysis below.

## II. LAW AND ANALYSIS

### a. *Summary Judgment Standard*

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (citing Fed. R. Civ. P. 56(c)). A court must hold "a factual dispute to be 'genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party and a fact to be 'material' if it might affect the outcome of the suit under

the governing substantive law." *Voekel McWilliams Const., LLC v. 84 Lumber Co.*, 2015 WL 1184148, at \*5 (E.D. La. Mar. 13, 2015) (quoting *Beck v. Somerset Techs., Inc.*, 882 F.2d 993, 996 (5th Cir. 1989)).

When assessing whether a genuine dispute as to any material fact exists, courts "consider all of the evidence in the record but refrain from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008) (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). Accordingly, at the summary judgment stage, courts must view the facts in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *See, e.g.*, *Darden v. City of Fort Worth, Texas*, 880 F.3d 722, 727 (5th Cir. 2018) (quoting *City & Cnty. Of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, 603 (2015); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

Of course, "unsupported allegations or affidavits setting forth ultimate or conclusory facts and conclusions of law are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (internal quotation and citation omitted). Although the movant bears the initial burden of demonstrating the absence of a genuine issue of material fact, if it can carry that burden, the nonmoving party must "go beyond the pleadings and . . . designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 323-24. This burden is not satisfied by a "metaphysical doubt as to the material facts" or only a "scintilla" of evidence. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1086 (5th Cir. 1994)). Summary judgment must thus be

entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. As the United States Supreme Court has explained, "[i]n such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322-23. Courts "do not . . . in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)). Thus, "summary judgment is appropriate in *any* case 'where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant.' " *Id.* (quoting *Armstrong v. City of Dallas*, 997 F.2d 62, 67 (5th Cir. 1993)) (emphasis in original).

### b. *Berkshire's Motion for Summary Judgment (R. Doc. 158)*

The Court will first consider Berkshire's Motion. As a threshold matter, the Court must address Berkshire's contention that the relevant window of potential exposure under its first policy period is effectively limited to the roughly six-week period starting on August 12, 1974, when Berkshire's policy began, and ending on September 23, 1974, when Mr. Steib transferred to the shipfitting department. *See* R. Doc. 204, pp. 1-2. Avondale avers that Berkshire's argument overstates the effect of Mr. Steib's transfer because he continued work that could have exposed him to Eagle's asbestos-containing products after moving to shipfitting. R. Doc. 208, pp. 1-2. The Court agrees with Avondale on this point: Berkshire's restrictive framing does not fully account for Avondale's evidence that Mr. Steib continued vessel work after September 23, 1974.

Berkshire relies on Brent Levingston's written expert report for its proposition that Mr. Steib "was not exposed to asbestos after he became a shipfitter on September 23, 1974." R. Doc. 204, p. 2. However, Mr. Levingston's report does not reach this conclusion. Instead, he states that, once assigned to the shipfitting department, Mr. Steib "did not receive direct or bystander exposure to asbestos *while working on the platens*." R. Doc. 158-10, p. 20 (emphasis added). The report goes on to note, "While working in the Shipfitting Department, Mr. Steib stated he occasionally worked on vessels and barges, either as short-term transfer work or during weekend overtime work." *Id.* Mr. Levingston further explains that, during such work, Mr. Steib "worked around insulators handling asbestos-containing materials," and thus continued to sustain asbestos exposures. *Id.*

These conclusions are consistent with deposition testimony from both Mr. Levingston and Mr. Steib. First, Mr. Levingston testified that Mr. Steib's weekend overtime work "more likely than not" would have exposed him to asbestos-containing insulation products on LASH cargo vessels, approximately twenty of which were constructed at Avondale in the 1970s. R. Doc. 192-11, pp. 2-3, 5-6. Second, Mr. Steib testified that he continued to perform weekend overtime work on ships throughout his entire career at Avondale, including while assigned to the shipfitting department and after he became a foreman and superintendent:

> Q: So kind of the weekend work on the ships, that was something that you did throughout your career at Avondale?
> A. Yeah. We worked on weekends. . . .
> Q. So as I appreciate your testimony, even in the capacity as a foreman or a superintendent, on occasions you would go back on the ships; is that correct?
> A. Oh, yeah. Oh, yeah.

R. Doc. 192-2, pp. 3-4. Mr. Steib provided further testimony that, during his work on ships, he continued to work around insulation activities. *Id.* at p. 4 ("When we are on the ships, we are around pipe insulation and that type of material? . . . Yeah. Insulation and all of that.")

Accordingly, Berkshire's six-week window argument fails. The relevant inquiry is not limited to the period between August 12, 1974, and September 23, 1974. Instead, the full span of Berkshire's two policy periods—August 12, 1974, through August 12, 1975, and August 12, 1976, through August 12, 1977—remains at issue.

Having established that the relevant window extends across Berkshire's full policy periods, the Court next considers whether Avondale has produced sufficient evidence to create a genuine issue of material fact as to whether Mr. Steib was exposed to asbestos from Eagle's products during this timeframe. Berkshire's motion presents a narrow insurer-trigger issue. It does not contend that Eagle products were not present at Avondale during Mr. Steib's employment, but rather that Avondale cannot establish that Mr. Steib's exposure to asbestos both was the result of Eagle products *and* occurred during Berkshire's policy periods.

Berkshire correctly notes that, under Louisiana's exposure trigger rule, a liability insurer's policies are triggered only by exposure to harmful conditions during the policy period. *Cole v. Celotex*, 599 So. 2d 1058, 1076 (La. 1992); *Arceneaux v. Amstar Corp.*, 200 So. 3d 277, 282 (La. 2016) ("[T]he 'occurrence' that triggers coverage under an insurance policy is the plaintiff's exposure to harmful conditions within the policy period."). Berkshire also correctly observes that the party seeking coverage bears the burden of proving that the policy affords coverage for the incident at issue. *Tunstall v. Stierwald*, 809 So. 2d 916, 921 (La. 2002); *Smith v. Reliance Ins. Co. of Ill.*, 807 So. 2d 1010, 1015 (La. App. 5 Cir. 2003) (citing *Barber v. Best*, 394 So. 2d 779, 781

11

(La. App. 4 Cir. 1981)). To prevail on its claim against Berkshire as Eagle's insurer, Avondale must demonstrate by a preponderance of the evidence that Mr. Steib was exposed to asbestos from Eagle's products during the policy periods, that he inadvertently brought those fibers home on his clothing, and that this in turn exposed Mrs. Steib to a causative level of asbestos. *See Abadie v. Metro. Life Ins. Co.*, 784 So. 2d 46, 89-90 (La. App. 5 Cir. 2001) ("To prevail, a plaintiff in an asbestos case must show, by a preponderance of the evidence, that he was exposed to asbestos from the defendants' products, and that he received an injury that was substantially caused by that exposure."). Berkshire is also correct in its assertion that evidence of the mere presence of Eagle's products at Avondale is insufficient to establish liability. *Benard v. Eagle, Inc.*, 1 So. 3d 588, 593-94 (La. App. 4 Cir. 2008) (reversing denial of summary judgment where sole evidence connecting plaintiff to Eagle products was testimony that Eagle supplied asbestos to facility); *Lucas v. Hopeman Bros., Inc.*, 60 So. 3d 690, 702 (La. App. 4 Cir. 2011) (affirming summary judgment where evidence placed plaintiff at worksite with products from multiple suppliers but did not specifically place him around fibers emanating from that vendor's product). Accordingly, the question before the Court is not whether Avondale has assembled a broad historical record suggesting Eagle products were used at Avondale at various times, but instead whether that record is sufficiently specific as to product and time to create a genuine issue of material fact that Mr. Steib was exposed to asbestos from Eagle products during Berkshire's policy periods. *See Cole*, 599 So. 2d at 1076-77. The Court finds that it does not.

Avondale has submitted evidence that Eagle insulation products were used aboard certain vessels at Avondale and that insulation work generated visible dust. R. Doc. 192, pp. 3-7. It has also submitted evidence that Mr. Steib performed weekend overtime and some transfer work

aboard ships, including cargo ships, and that he worked around insulation activities while doing so. R. Doc. 192, pp. 3-8; R. Doc. 208, pp. 2-4. While this evidence supports the broader theory that Mr. Steib worked in shipboard environments where asbestos-containing insulation work occurred, defeating Berkshire's motion requires a more specific showing. The historical witness testimony cited by Avondale includes testimony that Eagle products were used somewhere at Avondale, testimony that Eagle products were used on certain vessels or in certain engine rooms over broad time spans, and testimony describing dusty insulation work generally. R. Doc. 192, pp. 3-7. Even affording credibility to all of the historical testimony, and drawing all reasonable inferences in Avondale's favor, none of it places Mr. Steib himself in proximity to Eagle products during Berkshire's policy periods. As Berkshire points out, Mr. Steib gave no testimony regarding Eagle during his deposition, he did not identify the name of any company that supplied asbestos-containing products to Avondale, and he could not identify the vessels on which he worked beyond describing some as "cargo ships." R. Doc. 158-2, p. 2; R. Doc. 204, pp. 2-3. Berkshire further points out, and the Court agrees, that there is no evidence that any of the historical witnesses cited by Avondale worked with or even knew Mr. Steib, much less observed him working around Eagle products during the relevant periods. R. Doc. 204, pp. 2-3.

These distinctions are critical. General evidence that Eagle products were used at Avondale, even on cargo ships and LASH vessels, is not enough by itself to trigger Berkshire's alleged coverage. Simply put, the evidence submitted by Avondale remains worksite-general and era-general, rather than Steib-specific and policy-period-specific. *See Benard*, 1 So. 3d at 593-94; *Lucas*, 60 So. 3d at 702; *Prive v. Eagle, Inc.*, No. 22-84, 2023 WL 2646433, at *2 (E.D. La. Mar. 27, 2023) (granting summary judgment where plaintiff could not identify defendant's product and

evidence did not establish causation with sufficient specificity). Avondale correctly notes that Louisiana law permits the use of circumstantial evidence in asbestos cases, and it also acknowledges that circumstantial evidence must still be sufficiently specific to make the fact sought to be proved more probable than not. R. Doc. 192, p. 10 (citing *Rando v. Anco Insulations, Inc.*, 16 So. 3d 1065, 1089 (La. 2009); *Danos v. Avondale Indus., Inc.*, 989 So. 2d 160, 163 (La. App. 4 Cir. 2008)). Here, the general evidence of Eagle products' presence at Avondale does not alone make it more probable than not that Mr. Steib specifically encountered asbestos from Eagle products during Berkshire's narrow policy periods rather than the products of any of the other multiple suppliers present at Avondale during the same era.

The expert opinions offered by Avondale do not cure this deficiency. While the testimony of Mr. Levingston, Dr. Kradin, and Dr. Staggs may contribute to a finding that Eagle products caused harmful take-home exposure that contributed to Mrs. Steib's mesothelioma, the threshold question for purposes of this motion is whether the record establishes that Mr. Steib actually encountered asbestos from Eagle products during Berkshire's policy periods. Where, as here, the record does not adequately establish that Mr. Steib encountered Eagle products during Berkshire's policy periods, expert opinions premised on the presumption that such an encounter occurred, standing alone, cannot create a genuine issue of material fact sufficient to defeat summary judgment. *See Celotex*, 477 U.S. at 322-23. The product and time gap in Avondale's proof remains.

The Court notes that this ruling is narrow. It does not find that Eagle bears no liability, nor that Avondale's claims against other parties lack merit. Instead, the Court finds only that Avondale has failed to produce evidence sufficient to trigger Berkshire's specific policy periods as alleged insurer of Eagle. Viewing the record in the light most favorable to non-movant Avondale, the

14

Court finds that Avondale has failed to satisfy the policy-triggering burden of producing sufficient evidence from which a reasonable factfinder could conclude that Mr. Steib was exposed to Eagle's asbestos-containing products during Berkshire's policy periods. For these reasons, Berkshire's Motion is GRANTED.

### c. *Eagle's Motion for Summary Judgment (R. Doc. 159)*

Next, the Court will consider the merits of Eagle's Motion. As noted above, the Court's analysis of Berkshire's Motion addressed only whether Avondale produced sufficient evidence to trigger Berkshire's coverage during specific policy periods as Eagle's alleged insurer. Eagle's Motion presents a different question: whether Avondale has produced sufficient evidence to create a genuine issue of material fact as to whether Mr. Steib was exposed to asbestos from Eagle products at all.

As noted in the previous section, Louisiana law requires a party asserting asbestos-related fault to establish (1) that the plaintiff was exposed to asbestos from the defendant's product and (2) that such exposure was a substantial factor in causing the alleged injury. *Rando*, 16 So. 3d at 1088, 1091; *Abadie*, 784 So. 2d at 89-90. This burden applies with equal force to contribution and virile share claims. *See Rando*, 16 So. 3d at 1088. Avondale, as the party seeking contribution from Eagle, bears the same burden of proof it would face as a direct claimant, and this burden may be satisfied through direct or circumstantial evidence. *Id.* at 1089; *Williams*, 23 F.4th at 512.

Mere proof that a defendant's product was present at a worksite is not sufficient by itself to establish product identification or causation. *Booth*, 854 So. 2d at 981-82; *Lucas*, 60 So. 3d at 702; *Benard*, 1 So. 3d at 593-94. Evidence that does no more than place a plaintiff at a worksite where a defendant's products were used, without specifically placing the plaintiff around asbestos

15

fibers emanating from that defendant's product, is insufficient to survive summary judgment. *Prive v. Eagle, Inc.*, No. 22-84, 2023 WL 2646433, at *2 (E.D. La. Mar. 27, 2023).

Thus, in reviewing Eagle's Motion, the Court considers whether Avondale has designated specific facts sufficient to permit a reasonable factfinder to infer, more probably than not, that Mr. Steib encountered asbestos from Eagle's products in the course of his work at Avondale. *See Celotex*, 477 U.S. at 323-24; *Delta & Pine Land Co.*, 530 F.3d at 398-99. Eagle's central argument—that Mr. Steib, the only firsthand witness to his work, never identified Eagle or its products in his deposition testimony, and that none of Avondale's historical witnesses knew Mr. Steib or could place him in proximity to Eagle products—does point out genuine weaknesses in Avondale's case. However, Avondale does more than simply prove that Eagle sold insulation products to Avondale at some point during Mr. Steib's employment. The historical testimony presented demonstrates that Eagle half-round pipe insulation was used by insulators aboard LASH vessels and in engine rooms during the 1970s—the same type of vessel, work environment, and type of product that Mr. Steib described encountering. R. Doc. 193, pp. 4-8. Several of these witnesses testified that Eagle products were present on every ship on which they worked during that period, and that the installation and cleanup of those materials created visible dust that contaminated workers' clothing. *Id.* This is not evidence that Eagle products were present somewhere at Avondale in a general sense; it is evidence that Eagle products were present in the specific shipboard environments where Mr. Steib described performing his work.

While Eagle very well may persuade a factfinder that Avondale's chain of inferences is too attenuated to carry its burden at trial, that is not the question at the summary judgment stage. The Court must view the record in the light most favorable to Avondale and draw all justifiable

inferences in its favor, without weighing the evidence or making credibility determinations. *Anderson*, 477 U.S. at 255; *Delta & Pine Land Co.*, 530 F.3d at 398-99. Viewed in that light, the record would permit a reasonable factfinder to infer that Mr. Steib was exposed to asbestos from Eagle products because he performed cleanup and overtime work in the engine rooms of cargo ships during the same years that multiple witnesses consistently identified Eagle half-round pipe insulation as being used in the engine rooms of the same type of vessels. Thus, Eagle has not established a complete absence of a triable issue.

Eagle correctly notes that this Court granted summary judgment in *Prive v. Eagle, Inc.* on similar facts. However, the facts presented in this case are distinct from those in *Prive*. While the *Prive* plaintiff "was unable to identify a product of either [defendant manufacturer] that he used," the defendant manufacturers also "provide[d] affidavits indicating their product was *infrequently* used in Plaintiff's type of work," and "[t]here [were] *no other supporting documents, evidence, or deposition testimony* to indicate any [defendant manufacturer's] product was used by Plaintiff at all, or was present in any materials used by or around Plaintiff." *Prive*, 2023 WL 2646433, at *1-2. Thus, summary judgment in those defendants' favor was proper. Here, the record is more developed. Avondale has presented specific testimony about the type of work Mr. Steib performed and the environments in which he performed it, which provides a factual foundation for connecting Eagle's products—identified by multiple witnesses as regularly present in those same environments—to Mr. Steib's shipboard exposure. That connection, while circumstantial, is sufficient to raise a triable issue.

As noted in the Court's analysis of Berkshire's Motion, expert opinions cannot substitute for absent exposure facts. *See Celotex*, 477 U.S. at 322-23. That principle drove the Court's ruling

17

on Berkshire's Motion because the record does not adequately establish by a preponderance of evidence that Mr. Steib encountered Eagle products *during Berkshire's specific policy periods*. That same concern does not apply to Eagle's Motion because the expert opinions of Mr. Levingston, Dr. Kradin, and Dr. Staggs are grounded in circumstantial evidence supporting the inference that Mr. Steib's exposure to asbestos from Eagle products *during the entire course of his employment*. R. Doc. 193, pp. 8-10.

The Court expresses no view on whether Avondale will ultimately carry its burden at trial. It concludes only that the record, when viewed in the light most favorable to Avondale, presents a genuine dispute of material fact as to whether Mr. Steib encountered asbestos from Eagle products during his shipboard work and whether that exposure contributed to Mrs. Steib's mesothelioma. That question is properly reserved for the jury. Therefore, Eagle's Motion is DENIED.

Accordingly,

**IT IS ORDERED** that Berkshire Hathaway Specialty Insurance Company's Motion for Summary Judgment (R. Doc. 158) is **GRANTED**.

**IT IS FURTHER ORDERED** that Avondale's claims against Berkshire Hathaway Specialty Insurance Company are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Eagle, Inc.'s Motion for Summary Judgment (R. Doc. 159) is **DENIED**.

New Orleans, Louisiana, this 23rd day of April, 2026.

GREG GERARD GUIDRY
UNITED STATES DISTRICT JUDGE